**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| PAUL R. WALKER | ) | |
| and | ) | CASE NO. 06-10762 |
| MILLIE L. WALKER, | ) | |
| | ) | |
| DEBTORS. | ) | JUDGE JOHN H. SQUIRES |

**NOTICE OF FILING OF UNITED STATES TRUSTEE'S BRIEF IN SUPPORT**
**OF TRUSTEE'S APPLICATION FOR FINAL COMPENSATION**

**PLEASE TAKE NOTICE** that on **July 30, 2008**, the United States Trustee filed electronically with the Bankruptcy Court his **BRIEF IN SUPPORT OF TRUSTEE'S APPLICATION FOR FINAL COMPENSATION** copies of which are attached hereto and herewith served upon you.

/s/ *Dean C. Harvalis*
Dean C. Harvalis, Assistant U.S. Trustee
OFFICE OF THE U.S. TRUSTEE
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-5783

<u>**CERTIFICATE OF SERVICE**</u>

      I, Dean C. Harvalis, Assistant U.S. Trustee, state that pursuant to Section II, B, 4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed. R. Civ. P. 5(a), service of **UNITED STATES TRUSTEE'S BRIEF IN SUPPORT OF TRUSTEE'S APPLICATION FOR FINAL COMPENSATION** on all parties identified as Registrants on the service list below was accomplished through the Court's Electronic Notice for Registrants and, as to all other parties on the service list below, I caused a copy to be sent via First Class Mail to the address(es) indicated before 5:00 PM on July 30, 2008.

                                                                /s/ *Dean C. Harvalis*

**Registrants Served Through the Court's Electronic Notice For Registrants:**

| | | | |
|---|---|---|---|
| David R. Brown | dbrown@springerbrown.com | Kerrie S. Neal | ecf@zaplawfirm.com |
| | Dbrown@ecf.epiqsystems.com | | Kneal@zaplawfirm.com |
| | Marigonzo@springerbrown.com | | |
| Arthur W. Rummler | arummler@springerbrown.com | | |
| Mark J. Carroll | carrollmark@ameritech.net | Thomas Twomey | ttwomey@zaplawfirm.com |
| Daniel A. Edelstein | dae@chitkowskilaw.com | | Ecf@zaplawfirm.com |
| Alexander Tynkov | ecf@zaplawfirm.com | William T. Surin | aslaw@mchsi.com |
| | Atynkov@zaplawfirm.com | Terri M. Long | Courts@tmlong.com |
| John A. Lipinsky | jlipinsky@comananderson.com | | |
| | Khaskell@comananderson.com | | |
| | Tmilton@comananderson.com | | |

**Parties Served via First Class Mail:**

Paul Walker and Millie Walker
16 W 611 Hillside Lane
Hinsdale, IL 60527

Roger J Brejcha
512 West Burlington
Suite 6A
LaGrange, IL 60525

Harris N.A.
3800 Golf Road Suite 300
Rolling Meadows, IL 60008

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| PAUL R. WALKER | ) | |
| and | ) | CASE NO. 06-10762 |
| MILLIE L. WALKER, | ) | |
| | ) | |
| DEBTORS. | ) | JUDGE JOHN H. SQUIRES |

**UNITED STATES TRUSTEE'S BRIEF IN SUPPORT OF**
**TRUSTEE'S APPLICATION FOR FINAL COMPENSATION**

William T. Neary, the United States Trustee for the Northern District of Illinois, by and through his Assistant, Dean C. Harvalis, files this Brief in Support of Trustee's Application for Final Compensation and states the following:

**FACTS**

1. The debtors, Paul R. Walker and Millie L. Walker ("Debtors"), filed a joint voluntary petition for chapter 13 relief on August 30, 2006.

2. The United States Trustee appointed David R. Brown ("Trustee") as interim chapter 7 trustee on October 16, 2006, after the case was converted from chapter 13.

3. Thereafter, the Trustee administered the estate, pursuant to his duties enumerated in section 704 of the Bankruptcy Code. This case involved the sale of the Debtors' residence and a resolution of the entitlement to competing mortgage creditors, mechanic's lien creditors, and judgment lien creditors.

4. The disposition of the estate generated $804,954.99 in receipts and $752,916.20 in disbursements to creditors.

5. The Trustee's application for compensation requests a commission in the amount of $41,997.75 based on total disbursements to parties in interest, excluding the Debtors, but including holders of secured claims in the amount of $774,954.99. There will be no disbursements to unsecured creditors.

6. The trustee fee represents the full statutory commission to which the Trustee is entitled pursuant to 11 U.S.C. §§ 330(a)(7) and 326.

7. Notice of the final report and application for compensation was provided to all parties in interest, and no objections have been filed by any party in interest.

8. The Bankruptcy Court ordered a hearing to be held on the Trustee's application for compensation and ordered supplemental briefing by the Trustee concerning the new commission standards.

9. The Bankruptcy Court also gave leave and invited the United States Trustee to file his own brief on the issue.

## INTEREST OF THE UNITED STATES

10. The issue before the Court calls for an examination of recent statutory amendments affecting chapter 7 bankruptcy cases and trustees serving in such cases. 11 U.S.C. §§ 330(a)(3) and (7).

11. The United States has a direct interest in the proper construction of these provisions because United States Trustees, who are Justice Department officials appointed by the Attorney General, supervise the administration of chapter 7 bankruptcy cases and trustees in such cases in all

federal judicial districts within this circuit. 28 U.S.C. §§ 581-589b. *See also* H.R. Rep. No. 95-595, at 88 (1977) (United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena"); *In re Castillo*, 297 F.3d 940, 950 (9th Cir. 2002) (citing this legislative history).

12.    The United States has two separate and distinct interests in this matter. First, the United States Trustee has the statutory duty to "establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11." 28 U.S.C. § 586(a)(1).

13.    Second, the United States Trustee has the statutory duty to supervise the administration of "cases and trustees in cases under chapter 7" by "reviewing . . . applications filed for compensation and reimbursement under section 330" and "filing . . . comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application." 28 U.S.C. §§ 586(a)(3)(A)(i) and (ii).

14.    In light of these interests, the United States Trustee accepts the Court's invitation to share its views on the proper construction of §§ 330(a)(3) and (7). *See* 28 U.S.C. § 517 (authorizing the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States"). *See also* 11 U.S.C. § 307 ("[t]he United States trustee may raise and may appear and be heard on any issue in any case or proceeding"); *In re Donovan Corp.,* 215 F.3d 929, 930 (9th Cir. 2000) (interpreting § 307).

3

# ARGUMENT

## A. PURSUANT TO THE BAPCPA AMENDMENTS, CHAPTER 7 TRUSTEE COMPENSATION MUST BE DETERMINED AS A COMMISSION BASED UPON THE PERCENTAGES PROVIDED IN SECTION 326, ABSENT EXTRAORDINARY CIRCUMSTANCES UNRELATED TO SECTION 330(a)(3) FACTORS.

15. The Bankruptcy Abuse and Consumer Protection Act of 2005, Public Law 109-8, 119 Stat. 23 (2005) ("BAPCPA"), made significant amendments to 11 U.S.C. § 330, which governs compensation for bankruptcy professionals. The amendments replaced the former open-ended reasonableness standard with commission-based compensation for chapter 7 trustees.

16. Section 407 of the BAPCPA amended § 330 in two ways that affect the compensation of chapter 7 trustees.[1] First, it specifically eliminated the amount of time spent on services as a

---

[1] As amended, § 330(a)(3) currently reads as follows:

> (3) ~~(A)~~ In determining the amount of reasonable compensation to be awarded **to an examiner, trustee under chapter 11, or professional person**, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, the importance, and nature of the problem, issue, or task addressed; ~~and~~
> **(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and**
> ~~(E)~~ *(F)* whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The removal of the first designation "(A)" was purely a technical amendment to eliminate the use

consideration for chapter 7 trustees, by amending § 330(a)(3) to add to the initial paragraph the following critical restrictive language: "to an examiner, trustee under chapter 11, or professional person."

17.     Second, section 407 added a new subparagraph (7) to § 330(a) that provides as follows: "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."

18.     These provisions transformed the standards for awarding trustee compensation. Read together, they establish a strong presumption that trustee compensation must be calculated as a commission and allowed in the amounts specified by § 326.

19.     Prior to BAPCPA's amendment limiting § 330(a)(3) to examiners, trustees under chapter 11 or professional persons, a bankruptcy court was directed to consider those factors delineated in § 330(a)(3) in assessing the reasonableness of trustee compensation, including hours spent by the trustee. This analysis frequently resulted in reductions of fee requests from § 326 maximum amounts. Those maximum amounts were regarded as a cap - a limitation of fees - and not an entitlement.

20.     With the BAPCPA, Congress fundamentally changed the manner of chapter 7 trustee compensation, by mandating the awarding of a commission and eliminating the cap/limitation concept.

---

of that designation on two sub-paragraphs. The language in bold indicates the language added by the BAPCPA amendments.

5

21. The plain language[2] of amended § 330(a)(3), which contains the factors formally utilized to reduce compensation from the commission amounts, now specifically limits that section's application - and therefore the consideration of such factors and time expended and hourly rates - to only three types of officers: examiners, chapter 11 trustees, and professional persons. Chapter 7 trustees were excluded.

22. Accordingly, for professionals *other than* chapter 7 trustees, bankruptcy courts must, as under prior law, continue to consider such factors as the time expended and the hourly rates charged. The contrary must now be the case for chapter 7 trustees. The language of amended § 330(a)(3) permits but one interpretation: Congress no longer intended bankruptcy courts to determine the reasonableness of chapter 7 trustees' fees according to such considerations as the amount of time spent, the appropriateness of the hourly rates requested and the customary compensation for comparable, non-bankruptcy work. Otherwise, Congress would not have excluded chapter 7 trustees from § 330(a)(3). The amendments should be interpreted as precluding the courts from considering these factors.

23. Moreover, having purposely eliminated chapter 7 trustees from § 330(a)(3), Congress substituted a new unambiguous commission standard of compensation for chapter 7 trustees through the enactment of § 330(a)(7). The plain language of § 330(a)(7) requires that the reasonable

---

[2] "It is axiomatic that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685 (1985), *quoting Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756 (1975) (POWELL, J., concurring).

compensation of a trustee *shall* be treated as a commission, based on § 326.[3]

24.     Because § 330(a)(7) directs that reasonable compensation must be treated as a "commission" based on § 326, it is necessary to consider the meaning of that term. Courts apply a "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "Commission" is not defined in the Bankruptcy Code but commonly means a "percentage of money taken in on sale, given as pay to a sales clerk or agent." *Webster's New World Dictionary of the American Language* 285 (2d ed. 1972). Even when viewed as a legal term, its meaning is virtually the same. For example, its legal usage is a "fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction < a real-estate agent's commission >." *Black's Law Dictionary* 264 (7th ed. 1999).

25.     In mandating that a trustee's reasonable compensation "shall" be determined according to a "commission" based on § 326 - supplanting the former § 330(a)(3) analysis - the BAPCPA amendments require that § 326 be the starting point for the determination of a chapter 7 trustee's reasonable compensation. *See Kelly v. Robinson*, 479 U.S. 36, 43 (1986) (statutory text is the starting point for statutory construction). Moreover, because a commission, by definition, is compensation based on a percentage of funds, such compensation must be determined according to

---

[3] Section 330(a)(7) does not expressly limit its application to a chapter 7 trustee's compensation, but instead simply references the compensation of a trustee. Nonetheless, the compensation of chapter 11 trustees is specifically provided for in § 330(a)(3), while standing trustees in chapters 12 and 13 are compensated pursuant to 28 U.S.C. § 586(e). Therefore, considering the overall context of the amendments to § 330, it is evident that Congress intended § 330(a)(7) to apply only to chapter 7 trustees. *See Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989) ("[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").

7

the percentages of disbursements made by the chapter 7 trustee "to parties in interest, excluding the debtor, but including holders of secured claims" as specified in § 326(a).[4]

26.     Congress did not, however, entirely sever the connection between chapter 7 trustee compensation and the standard of reasonableness required by § 330(a)(1).  Both § 326(a) and § 330(a)(7) employ the terminology of "reasonable" compensation, and § 330(a)(2) provides that the "court may . . . award compensation that is less than the amount of compensation that is requested." The interplay between §§ 326(a), 330(a)(1), 330(a)(2) and 330(a)(7) requires that the trustee's fee must be determined in the first instance according to the commission amounts specified in § 326(a), unless such amounts would constitute unreasonable compensation based on factors *other than* those identified in § 330(a)(3), from which the chapter 7 trustees have been specifically exempted.[5]

27.     Any other approach would disregard the fact that chapter 7 trustee compensation was excluded from consideration pursuant to the § 330(a)(3) factors.  Moreoever, an alternative construction would fail to give meaning to all provisions of the statute, most notably § 330(a)(7), which would be rendered surplusage.[6]

---

[4] The specified percentages under § 326 are as follows:

| %    | range of disbursements |   |            |
|------|------------------------|---|------------|
| 25%  | $0                     | - | $ 5,000    |
| 10%  | > $5,000               | - | $50,000    |
| 5%   | > $50,000              | - | $1,000,000 |
| 3%   | >$1,000,000            |   |            |

[5] The United States Trustee respectfully submits that the statutory provisions are best harmonized by reading them to create a strong presumption that the commission must be awarded, rather than by reading § 330(a)(7) out of the statute.

[6] *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute. . . . [Because] this rule [is] a cardinal principle of

28.   The applicable BAPCPA amendments require that a chapter 7 trustee's compensation be determined as a commission, absent extraordinary circumstances that are unrelated to the § 330(a)(3) factors. Such circumstances will occur only in the rare and unusual case. There is no suggestion that they are present in this case.[7]

### B. THE CASES INTERPRETING SECTION 330(a)(7) FAIL TO FOLLOW THE BAPCPA AMENDMENTS.

29.   There are no opinions by United States Courts of Appeal or District Courts addressing the trustee commission mandated by § 330(a)(7). All reported decisions are by bankruptcy courts. To date there have been six substantive decisions, all of which are treated below. Unfortunately, the decisions are contradictory and confusing. Some struggle to reconcile the amendments with prior standards; others do not even appear to recognize that the law has changed.

30.   The first decision to interpret § 330(a)(7) was *In re Clemens*, 349 B.R. 725 (Bankr. D. Utah 2006). The United States Trustee submits that the *Clemens* opinion misinterprets § 330(a)(7) and has been erroneously relied upon by other courts in the development of the law thereby fails to address Congress' intent to transform trustee compensation standards.

31.   In *Clemens*, the court determined that the language of § 330(a), as amended by the BAPCPA, requires courts to determine the reasonableness of a chapter 7 trustee's fees according to

---

statutory construction . . . a statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant") (internal quotations and citations omitted). *See also*, *2A N. SINGER, STATUTES AND STATUTORY CONSTRUCTION* § 46:7 (6th ed. 2003) ("The legislature is presumed to have intended to avoid surplusage in the words and sentences and therefore it is permissible to interpret the statute to avoid such a pitfall.")

[7] For example, if the trustee had delegated a substantial portion of case administration, or if the trustee's administration fell below acceptable standards, a court might reduce the trustee's commission in accordance with § 330(a)(2), based on factors other than those set forth in § 330(a)(3).

9

the *Johnson* Lodestar factors.[8] The court also concluded that the BAPCPA amendments require only that it include a consideration of the provisions of § 326. Id. at 729. The court determined that pursuant to the decision in *In re Miniscribe Corporation*, 309 F.3d 1234 (10th Cir. 2002), § 330(a)(1) required that the *Johnson* Lodestar factors supplement the factors set forth in § 330(a)(3). *Clemens,* 349 B.R. at 727-30. The court further reasoned that although Congress had amended § 330(a)(3) to make that section inapplicable to chapter 7 trustee compensation, it had not amended § 330(a)(1). The court asserted that under *Miniscribe,* the *Johnson* factors were derived from § 330(a)(1) and concluded that because Congress had not amended § 330(a)(1), the Lodestar analysis must continue to be part of the reasonableness analysis concerning chapter 7 trustee fees. Id. at 729-30. Because the Lodestar factors were in its view still part of the reasonableness analysis, the court determined that § 330(a)(7) had a very small impact on pre-BAPCPA practice in awarding trustee fees.[9]

---

[8] As discussed in *Clemens*, the *Johnson* "Lodestar factors" are: 1) the time and labor involved; 2) the novelty and difficulty of the issues involved; 3) the requisite skill to perform the services properly; 4) the preclusion of other employment; 5) the customary charges by other professionals; 6) the contingent nature of the fee; 7) time limitations imposed by acceptance of the employment; 8) the amount generated for the creditors and the results obtained; 9) the experience, reputation, and ability of the professional; 10) the undesirability of the case; and 11) awards in similar cases. *Clemens*, 349 B.R. at 728, n. 7.

[9] The court remarked that "its holding may mean that the terms of § 330(a)(7) have a small impact on pre-BAPCPA practice in awarding Trustees fees" and even acknowledged that "[t]o some extent this might conflict with the general rule of statutory interpretation that a Court should avoid surplusage." *Clemens*, 349 B.R. at 731. The court also noted that under its view "the recent amendments to § 330(a)(3) will likely have little effect on the Court's review of chapter 7 Trustee's fees," id. at 730 n. 20; that "[r]ead literally, § 330(a)(7) adds little to the inquiry required by § 330(a)," id. at 730; and that "it means very little to call this compensation a 'commission.'" Id.

10

32.     *Clemens* correctly recognized that the former § 330(a)(3) analysis and the Lodestar analysis substantially overlap. Id. at 730, n. 19, *quoting In re Marlar*, 315 B.R. 81, 84 (Bankr. W.D. Ark. 2004) ("Although stated differently, these criteria [Lodestar factors] are similar to the factors enumerated by the statute"). There is indeed, a good reason for this similarity.

33.     Section 330(a)(3) was added to § 330 pursuant to the Bankruptcy Reform Act of 1994, Pub. L. 103-394, title I, 117, title II, 224(b), 108 Stat. 4119, 4130, and thereby clarified many of the judicial standards and practices regarding the allowance of professional fees. *Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 572 n. 10 (3d Cir. 1997). Among the standards codified in § 330(a)(3) were the *Johnson* Lodestar factors. *In re Eliapio,* 298 B.R. 392, 398, n. 9 (Bankr. 9th Cir. 2003) (factors set forth in § 330(a)(3) are codification of *Johnson* factors); *In re King*, 350 B.R. 327, 331-32 (Bankr. S.D. Tex. 2006) (same); *In re Vernon-Williams*, 343 B.R. 766, 795 (Bankr. E.D. Va. 2006) ("Congress has now, in effect, substantially codified the holding in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974),* into § 330(a)(3) of the Bankruptcy Code"); *In re Unger & Associates, Inc.*, 277 B.R. 694, 697 (Bankr. E.D. Tex. 2001) (same); *In re Reconversion Technologies, Inc.*, 216 B.R. 46, 52 (Bankr. N.D. Okla. 1997) (same).

34.     Pursuant to the Bankruptcy Reform Act of 1994, § 330(a)(3) provided that "[i]n determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors. . . ." Given the directive that the courts consider "all relevant factors" in determining reasonable compensation, it is clear that Congress intended this subparagraph to control the valuation of professional services provided to the bankruptcy estate. This conclusion is buttressed by the fact that Congress codified many of the *Johnson* Lodestar factors in this subparagraph, as those factors were developed by the

11

courts to assist in the determination of what constituted reasonable compensation for professionals. In light of its legislative history, it is clear that when Congress amended § 330(a)(3) to exclude any consideration of the nature, extent and value of a chapter 7 trustee's services, it intended that the courts were not to consider either the enumerated factors set forth in § 330(a)(3) or the substantially similar Lodestar factors derived from the *Johnson case.*

35. The *Clemens* court recognized the overlap between § 330(a)(3) and the Lodestar factors, concluded that the plain language of § 330(a)(3) prohibits application of the factors enumerated thereunder to chapter 7 trustees, and yet found that § 330(a)(1) mandates the consideration of those same factors under *Johnson*. A statutory construction that leads to such an inconsistent result should be avoided. *Webster v. Reproductive Health Services*, 492 U.S. 490, 514 (1989) ("The basic rule of statutory construction is to first seek the legislative intention, and to effectuate it if possible, and the law favors constructions which harmonize with reason, and which tend to avoid unjust, absurd, unreasonable or confiscatory results, or oppression"), *quoting State ex rel. Stern Brothers & Co. v. Stilley*, 337 S.W.2d 934, 939 (Mo. 1960).

36. *In re McKinney*, 374 B.R. 726 (Bankr. N.D. Cal. 2007) ("*McKinney I*"), held that "time spent is still a relevant factor, even if it is no longer the starting point for calculating chapter 7 trustee compensation." Id. at 728. The opinion properly recognizes that "BAPCPA changed how chapter 7 trustee compensation is to be determined." Id. at 729.[10] It suggests that the commission amount is now the starting point in the analysis, but the court must consider a variety of factors - including time spent - to determine whether the commission amount "constitutes unreasonably large

---

[10] Unlike *Clemens*, *McKinney I* holds that "[u]nder BAPCPA, the court is directed to apply the Lodestar approach only in determining the compensation of "an examiner, **chapter 11 trustee**, or professional person." Id. (emphasis in original, footnote omitted).

12

compensation." Id. at 730.  However the court explicitly denied that it was employing a Lodestar test.[11]  The trustee was ordered to file time records.  Id. at 732.

37.     *In re Mack Properties, Inc.*, 381 B.R. 793 (Bankr. M.D. Fla. 2007), relied in part on *Clemens, McKinney I* and *In re Ward,* 366 B.R. 470 (Bankr. W.D. Pa. 2007), *appeal filed*, Roeder v. No Appellee 08-00071 SJM.  The bankruptcy court concluded that "[t]he Court, pursuant to the clear, unambiguous language of Sections 326 and 330, will continue to apply the reasonableness standard in Chapter 7 trustee compensation determinations." *Mack Properties,* 381 B.R. at 799.[12]  Like *McKinney I*, *Mack* similarly acknowledges - openly - that it is substituting its judgment for that of Congress, remarking that "[e]mploying a strict maximum commission award . . . may result in unjust and inequitable results."  Id.

38.     In *Mack*, the trustee requested compensation in the commission amount of $39,893.75.  The court declared that "[a] reasonable fee for the Trustee's services in this case is $15,000.00."  Id. at 796, 799.  Given the absence of an explanation for the derivation of that amount, the award has an arbitrary quality.  Congress mandated a more objective standard.

39.     In *In re McKinney*, 383 B.R. 490 (Bankr. N.D. Cal. 2008) ("*McKinney II*"), the court revisited § 330 after the trustee submitted the time records required by *McKinney I*.  *McKinney II* correctly recognized that § 330(a)(7) "creates a presumption that the statutory maximum constitutes

---

[11] "The court does not employ a Lodestar approach when it considers time spent along with other factors in determining whether the statutory maximum constitutes unreasonably large compensation in a particular case."  Id.

[12] According to the *Mack* court, "[h]ad Congress intended to eliminate discretion from a compensation determination, it would have used the imperative 'shall' rather than 'may' in Section 326."  Id. at 797 (footnote omitted).  But Congress, as has been noted, most definitely used "shall" when discussing the commission in § 330(a)(7) - Congress directed that courts "shall" treat the § 326 amounts as a commission.

reasonable compensation. . . . " Id. at 492.  Unfortunately it holds that the presumption can be rebutted by a factor, the consideration of which Congress forbade: the "presumption is rebutted in the present case because the statutory maximum is substantially disproportionate to the value of the services Trustee was required to perform." Id.  The court elaborated:

> Section 330(a)(7) creates a presumption that the statutory maximum is reasonable compensation.  If the court, after reviewing time records and all other relevant facts and circumstances, determines that the statutory maximum is not substantially disproportionate to the value of the services required from the trustee, the court should award the statutory maximum.  If, after such review, the court determines that the statutory maximum is substantially disproportionate to the value of the trustee's services, the court should award as a "reasonable commission" the maximum amount that is not substantially disproportionate to the value of the trustee's services to the estate.

Id. at 494.

40. The court's "substantially disproportionate" test appears to merely be a new name for the Lodestar analysis that it earlier claimed to have rejected.  The test requires that fees should be reduced if the implied hourly rates are too high.[13]

41. In *In re Ward,* 366 B.R. 470 (Bankr. W.D. Pa. 2007), *appeal filed*, Roeder v. No Appellee 08-00071 SJM, the bankruptcy court began its analysis with an extended approving quotation from *Clemens. Ward,* 366 B.R. at 474-75.  As noted, *Clemens* has been the source of misapplication of the law.

---

[13] In other words, the fee request will be reduced if the "value" of the trustee's services - presumably determined by multiplying hours spent by the trustee's hourly rate - is "substantially disproportionate," presumably meaning significantly less than the commission amount.  This test obviously gives significant weight to time spent, notwithstanding the elimination of chapter 7 trustees from § 330(a)(3).  We respectfully submit that Congress has already determined that the "value" of the services is the commission amount.

14

42. In *Ward* the bankruptcy court likewise failed to address the BAPCPA amendments. It enunciated no cognizable legal standards for review of trustee compensation. Rather, it employed reasonableness review based largely on the very factors that it concedes were specifically made inapplicable to chapter 7 trustee compensation.[14]

43. The *Ward* opinion also contains a lengthy approving quotation from *Collier on Bankruptcy,* Id. at 475-76. *Collier* predicts that the "primary effect of the change should be that, in the majority of cases, a trustee's allowed fee will presumptively be the statutory commission amount." Id. at 475. But the bankruptcy court recognizes no such presumption. Instead, the bankruptcy court relies on another passage from *Collier* contemplating a reasonableness standard of review that encompasses an analysis of hours expended that in many cases will be indistinguishable from the superseded Lodestar approach:

> there may be cases where the amount of "moneys disbursed" by the trustee may be very high in relation to the services performed . . . [C]ases where there are significant disbursements without a proportionate effort by the trustee, are examples of cases where the commission fee may not be reasonable. . . [C]ourts will need to assess whether the implied hourly rate is so high as to render the fee not reasonable.[15]

44. The *Ward* opinion then applies *Collier's* "proportionate effort" formulation of the Lodestar.[16] It posits that an appropriate hourly fee would result in compensation of approximately $2,000, but, inexplicably, "proposes to allow Trustee Compensation in the amount of $5,000"

---

[14] As noted, the bankruptcy court explicitly recognized that "[s]pecifically missing from those persons to [whom] § 330(a)(3) is applicable is a Chapter 7 Trustee." *Ward,* 366 B.R. at 473.

[15] Id. at 475-76, *citing* L. King, Collier on Bankruptcy, ¶ 330.03 [1][a] (15th ed. rev'd 2006).

[16] The "proportionate effort" formulation - much like the "substantially disproportionate" test of *McKinney II* - is another euphemism for analysis of hours spent.

15

because "the Court has always recognized that the trustees often perform services in cases where they end up with an estate of little or no value and receive little or no compensation, and therefore, been liberal in awarding trustee fees." *Ward,* 366 B.R. at 476.[17]

45.Notwithstanding its lengthy quotation from *Clemens*, *Ward* did not follow *Clemens* by recognizing the statutory change in its analysis. *Clemens* at least acknowledges that a court must "consider the provisions of § 326 *as a part of* its reasonableness inquiry," 349 B.R. at 731 (emphasis in original), permitting § 330(a)(7) to "supplement the Court's Lodestar analysis." Id. Moreoever, *Clemens* concludes that courts "must now determine reasonableness with an eye on the statutory cap." Id.

46.But *Ward* appears to regard the amendments as a nullity, employing the precise analysis that it applied pre-BAPCPA. It reiterated the very standards that it had applied in review of trustee compensation pre-BAPCPA, consistent with its view that nothing has changed. The opinion cites four (4) *pre-BAPCPA* cases for the proposition that "[c]ourts have emphasized repeatedly that a trustee is not entitled to the maximum fee allowed under § 326(a)." *Ward,* 366 B.R. at 473.[18] This citation illustrates the bankruptcy court's failure to recognize Congress' enactment

---

[17] It is respectfully suggested that Congress likewise recognized this difficulty - that in many cases chapter 7 trustees receive little or no compensation - and decided to address it by mandating a commission, rather than leaving compensation decisions to the generosity of bankruptcy judges.

[18] The cases are *In re Narragansett Clothing Co.*, 210 B.R. 432 (1st Cir. BAP 1997); *In re Biskup*, 236 B.R. 332 (Bankr. W.D. Pa. 1999); *In re Guyana Dev. Corp.*, 201 B.R. 462 (Bankr. S.D. Tex. 1996) and *In re Lan Associates*, 192 F. 3d 109 (3d Cir. 1999).

of § 330(a)(7) and its intent to reverse those very holdings and replace them with a commission - with entitlement to maximum fee absent extraordinary circumstances.[19]

47.     In summary, the authorities are somewhat contradictory to one another, which should not be surprising because none of them have based their reasoning on the amendments to the statute. *Clemens* employs a Lodestar analysis which includes the commission amount as one factor. *McKinney I* specifically repudiates the Lodestar approach as well as any strict reliance on the commission amount mandated by Congress. It properly employs the commission amount as a starting point, but considers other factors to determine whether the commission amount would constitute "unreasonably large compensation." *Mack Properties* adopts a reasonableness standard. *McKinney II* recognizes a presumption requiring the commission amount unless that amount is "substantially disproportionate" to the "value" of the trustees services, in which case courts should award the maximum amount that is not substantially disproportionate. And *Ward* continues to apply to same *pre-BAPCPA* standards despite Congress' amendments to the Bankruptcy Code.

48.     Bankruptcy courts have, therefore, failed to recognized the legislative intent to transform trustee compensation from reasonableness review to a commission standard. Some courts fail to acknowledge that the law has changed. Other courts struggle to reconcile an inherently conflicted approach - that compensation is to be a commission but must also be reasonable. The United States Trustee submits that these courts are viewing this perceived dilemma through the prism of decades of old law that afforded them substantial discretion. As a result, these courts

---

[19] The legislative history indicates that the BAPCPA amendments "add a provision that requires a court, in determining the amount of reasonable compensation to award a trustee, to treat such compensation as a commission pursuant to section 326 of the Bankruptcy Code." H.R. 109-31, 109th Cong., 1st sess. BAPCPA of 2005 § 407 (April 8, 2005).

perceive an inconsistency where there is none - Congress in fact determined that the commission amount is presumptively reasonable, and should not be reduced according to those factors set forth in § 330(a)(3). The infirmity is in not reading the statute as a whole and according deference to what Congress sought to accomplish. The courts are placing undue emphasis on the word "reasonable" - as if applying prior law - and diminishing the "commission" requirement if not ignoring it entirely.

## CONCLUSION

49.     This Court is urged to enter an order that applies § 330(a)(7) in accordance with clearly expressed legislative intent. Section 330(a)(7) requires that the full commission be presumptively allowed unless circumstances are demonstrated that render the commission unreasonable, other than through factors identified in § 330(a)(3), which Congress made inapplicable to chapter 7 trustees.

50.     Congress determined that trustee compensation "shall" be treated "as a commission." Congress did not enact language permitting a bankruptcy court to award a commission unless the bankruptcy court felt that the resulting implied hourly rate would be "too high." Rather, Congress imposed a strong presumption that the commission constitutes reasonable compensation unless the Court makes a finding of exception circumstances in this case.

> RESPECTFULLY SUBMITTED,
> WILLIAM T. NEARY
> UNITED STATES TRUSTEE

Dated: July 30, 2008                      /s/ *Dean C. Harvalis*
                                          Dean C. Harvalis, Assistant U.S. Trustee
                                          OFFICE OF THE U.S. TRUSTEE
                                          219 South Dearborn Street, Room 873
                                          Chicago, Illinois 60604
                                          (312) 886-5783